81 So.2d 15

## NEW YORK FIRE INSURANCE COMPANY

v.

## KANSAS MILLING COMPANY et al.

No. 41471.

April 25, 1955.

Rehearing Denied May 23, 1955.

Morgan, Baker & Skeels, Shreveport, for appellant.

Browne, Browne & Bodenheimer; L. Y. Barnette, Shreveport, for defendants-appellees.

HAWTHORNE, Justice.

"This litigation," said the trial judge, "arose out of the death in October, 1949 in Shreveport of an ox. Advertised as the world's largest ox he was, surprisingly, not from Texas, but was domiciled in Oklahoma and bore the name of Oklahoma Billy." This animal was owned by Darlene Shannon, minor daughter of L. D. Shannon, of Oklahoma, who was her qualified guardian. The ox was insured against the perils of transportation by the New York Fire Insurance Company in the principal sum of $10,000, and after its death suit was instituted in the United States District Court for the Northern District of Oklahoma [1] by the guardian of the minor to recover the face amount of this policy. That court found that the ox died on October 24, 1949, as a result of injuries received in an accident which occurred in Shreveport, Caddo Parish, Louisiana, within the provisions of the insurance policy, and accordingly awarded the plaintiff Shannon $10,000. The insurance company paid this judgment and was subrogated to all the rights of the policyholder.

The insurance company as subrogee then filed the instant suit in the First Judicial District Court of the State of Louisiana for the Parish of Caddo, seeking an in solido judgment for $10,000 against the defendants Kansas Milling Company, a corporation organized under the laws of Kansas, and Wray-Dickinson Company, a Louisiana commercial partnership. Plaintiff alleged that the death of the ox was caused by negligence. After trial the district court rendered judgment rejecting plaintiff's demands, and it appealed.

For the purpose of advertising its business defendant Kansas Milling Company obtained the gratuitous loan of the ox from the father and guardian of its owner. In order to transport the animal from Oklahoma to Shreveport, Kansas Milling Company borrowed a truck from defendant Wray-Dickinson Company. This truck was sent to Oklahoma, and there a hitch called a "fifth wheel" was installed on the truck. By means of this fifth wheel a specially built two-wheel trailer in which the ox was customarily conveyed from place to place could be coupled to the truck. Both the fifth wheel and the trailer were loaned to Kansas Milling Company by Shannon along with the ox. The animal was brought in its trailer to Louisiana, where on October 17, 1949, it was exhibited on a vacant lot in the City of Shreveport. After this exhibition had been concluded, the ox's two-wheel trailer was attached to the Wray-Dickinson truck by means of the fifth wheel, and the animal was put into the

1. Suit No. 2616 civil on the docket of that court. [No opinion filed.]

trailer. The truck and trailer then started off, but they had proceeded only a very short distance[2] when they suddenly became disconnected. The front end of the trailer fell to the pavement, a distance of about four feet, and the ox was thrown violently forward. As a result of this accident the ox received injuries from which it died a week later.[3]

▮ At the time of this accident the ox was solely in the care and custody of Kansas Milling Company. Wray-Dickinson Company had nothing to do with the handling or transportation of the ox. Accordingly the judgment of the lower court rejecting plaintiff's demands against the defendant Wray-Dickinson Company is correct.

The law applicable to this case is found in our Civil Code in Title XII, Of Loan, Chapter 1, Of the Loan for Use, or Commodatum. Under the provisions of Article 2893 of this chapter, the loan for use "is an agreement, by which a person delivers a thing to another, to use it according to its natural destination, or according to the agreement, under the obligation on the part of the borrower, to return it after he shall have done using it". According to Article 2898, "The borrower is bound to keep and preserve, in the best possible order, the thing lent. He can use it only in the manner for which it is fitted

by its nature, or which is allowed by the agreement, under the penalty of damages". Article 2902 further provides that, "If the thing be made worse by the effects of the use alone for which it was borrowed, and without any fault on the part of the borrower, he is not answerable for the same".

▮ The loan of the ox in the instant case being one for use, there was an obligation on the part of the Kansas Milling Company to return the animal to the lender. Since it was unable to do so, it is responsible to the owner for its failure unless it can show that the death of the ox was due to no fault or negligence on its part.

In Nicholls v. Roland, 11 Mart., O.S., 190, this court said that the lender need only prove that he delivered the property to the borrower on the condition that it be returned, and that it then became the duty of the borrower to "give evidence which led to a fair and reasonable inference, that the loss of the property was not owing to any fault of his".

In Alex W. Rothschild & Co., Inc., v. Lynch, 157 La. 849, 103 So. 188, this court said: "A gratuitous bailee is prima facie liable for the goods of his bailor when they cannot be produced. Where chattels delivered to a bailee are lost or cannot be returned at all, the law presumes negligence to be the cause, and casts upon the

---

2. Some witnesses say 25 feet and others in the neighborhood of 100 feet.

3. In this court no contention is made that the injuries received by the ox at this time did not cause its death.

bailee the burden of showing that the loss is due to other causes consistent with due care on his part. * * *"

See also Niblett v. White's Heirs, 7 La. 253.

■ Consequently in the instant case the burden was on the borrower, Kansas Milling Company, to establish that the ox died through no fault or negligence on its part. It would be imposing an intolerable hardship on the lender to require of him not only to prove that he placed his property in the care of another, but also to show why he did not get it back. See Nicholls v. Roland, supra. The borrower in such a case is correctly presumed to have more knowledge than the lender of why the thing borrowed is not returned.[4] The question for decision, therefore, is: Has the borrower in the instant case, Kansas Milling Company, discharged this burden?

The evidence in this case discloses that, if a trailer is improperly connected to the fifth wheel on a truck, the truck and trailer will become disconnected. On the other hand it is equally clear from the testimony that, when properly hooked up, the truck and trailer cannot come apart if the fifth wheel is in mechanically good condition and properly locked. In the instant case both the specially built two-wheel trailer in which the ox was transported and the fifth wheel to which this trailer was con- nected had been in use for some five years and had never, to the knowledge of the caretaker and keeper of the animal, become disconnected. On the day of the accident, after the employees of defendant Kansas Milling Company had connected the trailer to the fifth wheel on the truck, the truck and trailer moved along a very short distance and then became disconnected, permitting the front of the trailer to fall to the pavement. The employees of defendant Kansas Milling Company gave no explanation of why the trailer parted from the truck, stating that "It just became unhitched". Immediately following the accident the trailer was again connected to the fifth wheel on the truck, and the ox was transported to a warehouse of Kansas Milling Company, apparently without any further trouble and without any repairs being made, and there is no testimony by these employees to show that the trailer came loose because of any breakage or mechanical defect. Moreover, the ox lived for about a week after the accident, and it would appear that during this time the truck and trailer were used to transport the ox from place to place without any repairs to the hitch.

The logical inference to be drawn from these facts is that the truck and trailer became disconnected at the time of the accident because they had been improperly hooked up by defendant's employees.

4. The burden of proof in the instant suit is similar to that which exists in a res ipsa loquitur case.

To rebut this inference of negligence the employees of the defendant Kansas Milling Company testified that they connected the trailer to the truck in the usual and customary manner and checked to see that the trailer and truck were properly engaged, and that they had no idea what made the device become disengaged and unhooked. In addition to the testimony of these witnesses defendants also offered the deposition of a mechanic in Oklahoma, who testified that he examined the fifth wheel involved in this case. We do not know exactly when this examination took place, but it was apparently made after the trailer and the fifth wheel had been returned to Shannon in Oklahoma. This witness testified that he found the fifth wheel cracked and pretty badly worn, and that the truck and trailer could have possibly become disconnected for this reason. We are not very much impressed with this testimony. Defendant offered no evidence to show that there was any mechanical defect in the fifth wheel at the time of the accident, and defendant's employees who were present when the accident occurred and who were familiar with this device did not suggest that a mechanical defect might have caused the mishap.

In the instant case we do not think that the defendant Kansas Milling Company has discharged the burden imposed upon it by law. That is, it has failed to adduce evidence which would lead to a fair and reasonable inference that the death of the ox was not due to any fault or negligence on its part. As we pointed out above, Kansas Milling Company had obtained a gratuitous loan of the animal, and was under the obligation of returning it to its owner. Upon its failure to do so the burden was on it to show that the death of the animal was due to causes consistent with proper care on its part, for in such a case the law presumes negligence or fault to be the cause of the animal's death. See Nicholls v. Roland, supra; Alex W. Rothschild & Co., Inc., v. Lynch, supra.

The judgment of the district court is affirmed insofar as it dismissed plaintiff's suit against the defendant Wray-Dickinson Company. However, the judgment is reversed and set aside insofar as it dismissed the suit against the defendant Kansas Milling Company, and it is now ordered that plaintiff have judgment against this defendant in the sum of $10,000 with interest at the rate of 5 per cent per annum from date of judicial demand until paid. Appellee Kansas Milling Company is to pay all costs of this suit.

MOISE, J., absent.